IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED
October 5, 2005

CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| BILLY WAYNE DOWNS | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action No. 3:05-CV-0791-R |
| | § | |
| LIBERTY LIFE ASSURANCE | § | |
| COMPANY OF BOSTON, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Billy Wayne Downs ("Plaintiff") filed suit against Liberty Life Assurance Company of Boston ("Defendant") to recover disability benefits under 29 U.S.C. §1132(a), a provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001 *et seq.* ("ERISA"). Defendant now moves to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court GRANTS Defendant's motion to dismiss.

### I. Background

The facts according to the Plaintiff are as follows: Plaintiff became an employee of International Multifoods Corporation ("Multifoods") in late 2001. (First Am. Compl. ¶3). Prior to that time, Multifoods instituted the Multifoods Disability Income Plan (the "Disability Plan"), which provides both short-term and long-term benefits to eligible employees. (Id. ¶4). Defendant insures and administers the Disability Plan. (Jt. App. 39).

While working in the scope of his employment on June 19, 2002, Plaintiff was injured when he fell into a grease pit at a Greyhound Bus Terminal in Abilene, Texas. (First Am. Compl. ¶5). Plaintiff's injuries from this accident were significant, permanent, and disabling. (Id.). Plaintiff

1

filed a claim for long-term disability benefits, which Defendant denied on June 13, 2003. (Id. ¶8).

Plaintiff then filed suit under 29 U.S.C. §1132(a), alleging that his claim for disability benefits was wrongly denied. As proof, he claims that the Disability Plan was in effect on January 1, 2001 and that he was qualified for coverage under the Disability Plan on June 19, 2002, the date of his accident. (Id. ¶¶4, 7). However, Plaintiff does not allege that he sought review of the administrator's decision prior to filing suit.

## II. Analysis

In its motion to dismiss, Defendant argues that Plaintiff cannot show that he has completed all the prerequisites for recovery under ERISA since he did not exhaust his administrative remedies as required under the terms of the Disability Plan. (See Def.'s Mot. at 1). In response, Plaintiff maintains, "evidence that he sustained a new injury after falling into the grease pit... were [*sic*] not developed until after the [deadline for seeking review]." (Pl.'s Resp. at 1). In the alternative, Plaintiff also defends that the Disability Plan "violates [his] rights of due process and right to trial by jury." (Id. at 2).

### A.     Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is disfavored in the law and rarely granted. *See Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). The complaint will only be dismissed if it appears beyond doubt that the claimant can prove no set of facts in support of its claim that would entitle him or her

to relief. *See Campbell*, 43 F.3d at 975; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). The relevant question is not whether the claimant will prevail but whether it is entitled to offer evidence to support its claims. *See Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 571 (N.D.Tex. 1997). Moreover, in ruling on a Rule 12(b)(6), "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 -1018 (5th Cir. 1996).

### B. The Disability Plan & Review of Denied Claims

Plaintiff's complaint directly refers to the "terms and conditions" of the Disability Plan. (See First Am. Compl. at ¶8). Consequently, the Court will consider the terms and conditions of the Disability Plan in determining whether Plaintiff has stated a claim for which relief may be granted. *See Lovelace*, 78 F.3d at 1017-1018; *see also, Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

Every employee benefits plan provided by Multifoods, including the Disability Plan, requires the employee to submit a claim for benefits to the appropriate claims administrator. (Jt. App. 34). If the claim is denied, the employee is to receive notice of the denial, including the reason for the denial, a reference to the provision of the plan or contract on which the denial is based, a description of any additional information or material necessary to perfect the claim, an explanation of why such material is necessary, and an explanation of the appeals process. (Id.). Participants receive a conspicuous, boldface notice that they "must" follow the claims and appeal process since the process is designed "to allow a full and fair review of a claim for benefits[] and to avoid disputes." (Id.). Participants are also told that the procedures are designed to "protect [their] rights," (id. 7, 34), and are warned that failure to follow those procedures might "jeopardize [their] right to bring an action

3

in court to claim that the benefits were wrongfully denied." (Id. 34).

When Defendant notified Plaintiff that his claim for disability benefits was denied, it also informed him that he could challenge the decision by filing a written request for review with the claims administrator within 180 days after receiving the notice. (Jt. App. 46.). The notice stated that when requesting review, Plaintiff should explain why he believed that the claim should be paid and should submit documentation like "test results, consultations, [and] claim specific info" in support of his claim. (Id.). The notice also informed Plaintiff of his right "to receive, free of charge, copies of all documents relevant to [his] claim" upon request and notified him of the deadlines before which a final decision would be made. (Id.).

### C.     Exhaustion of Administrative Remedies

Neither party disputes that ERISA governs the Disability Plan.[1] In fact, participants in the Disability Plan are explicitly told so. (See Jt.App. 173). One of the rights created under ERISA for participating employees is the right to file suit in federal court to recover benefits wrongfully withheld. Section 502 of ERISA permits a "participant or beneficiary" of a covered employee benefit plan to file a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B).

Although §1132 permits private enforcement of ERISA's substantive guarantees, the right to sue under the statute is not absolute. Many federal courts, including the Fifth Circuit, recognize that as part of ERISA's regulatory scheme, a claimant must exhaust his or her administrative remedies under the plan before filing suit under §1132(a)(1)(B). *See Bourgeois v. Pension Plan for*

---

[1] A covered benefit plan is generally defined in 29 U.S.C. §1003. Neither party disputes that the Disability Plan does not qualify for any statutory exemptions.

*Employees of Santa Fe Intern. Corporations*, 215 F.3d 475, 479 (5th Cir. 2000); *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir.1993), *cert. denied*, 510 U.S. 816 (1993); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990); *Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980). As the Fifth Circuit has explained, the exhaustion requirement "uphold[s] Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, provid[es] a clear record of administrative action if litigation ensues, and allow[s] judicial review of fiduciary action or inaction...." *Bourgeois*, 215 F.3d at 479 n.4 (citations omitted). For those reasons, Plaintiff must show that he exhausted his administrative remedies under the Disability Plan before he is entitled to any relief under §1132.

When Plaintiff received notice that his benefits were denied on June 13, 2003, he was expressly informed that he had 180 days to contest the administrator's decision in writing.[2] Even assuming the truth of every factual allegation in the complaint, Plaintiff does not show that he requested review of the administrator's decision, a necessary prerequisite to relief in the Fifth Circuit. Plaintiff even admits to never having sought review of the decision in his response to Defendant's motion.

Rather than concede that his failure to appeal the denial of his claim precludes relief under §1132, Plaintiff argues that the Court should excuse his failure to exhaust since it would have been factually impossible for him to have requested review of the decision before the deadline. This is

---

[2]Although the plan summary given to Plaintiff stated that a participant has 60 days to file a written request for review of an administrator's denial of benefits (Jt. App. 34), the notice of denial that Defendant sent to him in June 2003 expressly stated that he had 180 days to seek review of the administrator's decision. (Id. 46). As the Defendant properly points-out, an intervening change in regulations enlarged the minimum period for administrative review of an adverse decision on a claim for disability benefits. The new regulations went into effect *after* Plaintiff began working with Multifoods. *See* Claims Procedure, 65 FR 70246 (Nov. 21 2000), as amended, 66 FR 35886 (July 9, 2001) (to be codified at 29 C.F.R. §2560.503-1).

because "evidence that he sustained a new injury" after falling into the grease pit was not "developed" until after the deadline. (See Pl.'s Resp. at 1). In support of this contention, Plaintiff offers documentary evidence in the form of expert designations and medical reports to show that "evidence" of his injuries was not "developed" until after the deadline for filing a petition for review. (See Jt. App. 47-59).

In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider documents attached to a motion to dismiss only if the "documents... are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The same rule also applies to documents attached to a *response* to a motion to dismiss; they, too, must be referred to in the complaint and must be central to the plaintiff's claim. As one prominent treatise has noted, a court ruling on a Rule 12(b)(6) motion to dismiss "may not... take into account additional facts asserted in a memorandum opposing the motion, because such memoranda do not constitute pleadings under Rule 7(a)." 2 Moore's Federal Practice, §12.34[2] (3d. Ed. 2005); *see also, Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (plaintiff cannot amend the complaint in its brief opposing defendant's motion to dismiss).

When "matters outside the pleadings" are submitted in support or in opposition to a Rule 12(b)(6) motion dismiss, Rule 12(b) grants the courts discretion to accept and consider those materials but does not impose an obligation to do so. Fed. R. Civ. Proc. 12(b); *see also, Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999), *cert. denied*, 528 U.S. 967 (1999) (court has discretion to consider extrinsic materials submitted in conjunction with a Rule 12(b)(6) motion but

is not required to do so). The only obligation that Rule 12(b) imposes on the Court is conditional on whether it accepts those materials, which are "outside the pleadings." *See* Fed. R. Civ. Proc. 12(b). If the Court decides to consider the extraneous materials, then the Court must treat the Rule 12(b)(6) motion as a motion for summary judgment under Rule 56, after giving the parties notice of the conversion and a reasonable opportunity to present all pertinent materials. Fed. R. Civ. Proc. 12(b). However, if the Court refuses to consider materials outside the pleadings, then the Rule 12(b)(6) motion remains intact and may be disposed of on its merits under the appropriate standard of review. Moreover, "the mere submission of extraneous materials does not by itself convert a Rule 12(b)(6) motion into a motion for summary judgment." *Finley Lines Joint Protective Board v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997).

Here, Plaintiff offers two physicians' reports prepared in late 2004 and a copy of his expert designations, which includes a reference to an expert intending to testify about Defendant's procedural compliance under ERISA, to show that "evidence" of his injuries was not "developed" until after the deadline for filing a petition for review. Yet, the complaint does not mention that Plaintiff's injuries from the accident arose or manifested themselves after the deadline for seeking review. The complaint also does not refer to Defendant's compliance with ERISA's procedures. Accordingly, the documents that Plaintiff has filed in opposition to Defendant's motion to dismiss are "matters outside the pleadings" under Rule 12(b)(6), and the Court may refuse to consider them in ruling on Defendant's motion.

Assuming the truth Plaintiff's factual allegations in the complaint, the Court notes that Plaintiff filed an unsuccessful claim for disability benefits that was eventually denied "on or about June 13, 2003." (First Am. Compl. ¶7). To have sought disability benefits, Plaintiff must have been

7

aware of his injuries and must have attributed those injuries to an accident that occurred while working in the scope of his employment. When Defendant notified Plaintiff that his claim for benefits was denied, he also informed Plaintiff of his right to appeal that decision, but Plaintiff did not seek review.

Therefore, even assuming the truth of Plaintiff's factual allegations in the complaint, Plaintiff does not show that he exhausted the administrative remedies available to challenge the denial of his disability benefits. Because he has not exhausted those remedies, Plaintiff cannot show that he has fulfilled all the necessary prerequisites to recovery under §1132. Like the Fifth Circuit's recognized in *Bourgeois*, this is precisely the type of situation that Congress wished to avoid. If the Court were to review Plaintiff's claim without the benefit of a prior administrative review, it would do so without any "record of administrative action" and without any basis for it to judge the Defendant's "fiduciary action or inaction." *Cf. Bourgeois*, 215 F.3d at 479 n.4. This would essentially mean that the court, and not "an ERISA trustee," would be "responsible" for the actions of the plan administrator. *Cf. id*.

Although Plaintiff argues in his response to Defendant's motion that he should be excused from the exhaustion requirement for the reasons stated above, the Court chooses not to consider the documentary evidence that Plaintiff has submitted in support of that factual contention. Those documents are not referenced in the complaint and are not central to Plaintiff's claims. Hence, they are "matters outside the pleading," and it is within the Court's discretion to ignore them in ruling on Defendant's Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. Proc. 12(b). The Court is confident in its decision to not consider these materials, especially since Plaintiff had ample time to amend its complaint to include these factual allegations but did not do so. Moreover, the Court

8

also chooses to ignore these documents since it is concerned that Plaintiff's is now artfully attempting to circumvent the exhaustion requirement on the eve of dismissal, especially considering the contradictory proposition that "evidence" of Plaintiff's injuries from the work-related accident was not "developed" until after the deadline for seeking review of his denied claim for *disability* benefits.

### D.     Due Process

Plaintiff's claim that the Disability Plan violates due process is without merit. Plaintiff does not challenge a specific provision of the Disability Plan or explain how the program deprives him of due process.[3] Given the tenor of his response to Defendant's motion, Plaintiff appears to suggest that enforcing the exhaustion requirement against him – e.g. not granting review of the denied claim – somehow violates his rights to due process. In response to that claim, Defendant argues in its reply brief that the Fifth Circuit would not have strictly enforced the exhaustion requirement under ERISA if it violated the right to due process. (Def.'s Reply at 2). Although the Fifth Circuit would surely be flattered by Defendant's confidence in its prior decisions, it would be less than impressed if this Court were to base its decision on such an argument!

Plaintiff cannot prove that his due process rights are violated by the Defendant's refusal to reexamine his denied claim past the deadline for review. In general, the Constitution's guarantee of procedural due process applies only to state action, not private conduct. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989). As the Supreme Court explained in *De Shaney*, the "purpose" of the due process clause of the Fifth and Fourteenth Amendments "was to protect the people from the State, not to ensure that the State protected them

---

[3] Plaintiff's entire argument is the following: "Defendant's ERISA Plan violates Plaintiff's rights of due process..." *See* Pl.'s Resp. at 2.

from each other... [since] [t]he Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes." *DeShaney*, 489 U.S. at 196.

In some instances, though, a private entity may be a state actor. For example, a private entity's conduct may amount to "state action" when the private party acts in a judicial or quasi-judicial capacity pursuant to a legislative delegation of authority. *See Concrete Pipe & Products of California v. Constr. Laborers Pension Trust*, 508 U.S. 602, 617 (1993); *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Also, private conduct may be fairly treated as state action where a private entity is subject to extensive and pervasive regulation, such that there exists a "sufficiently close nexus" between the state and the regulated private conduct. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (internal quotation marks and citations omitted). "Whether such a 'close nexus' exists depends on whether the State," under those regulations, "has exercised coercive power or has provided such significant encouragement, either covert or overt, that the choice must... be deemed to be that of the state." *Id.* However, "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the state..." *Id.* (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974) and *Blum v. Yaretzky*, 457 U.S. 991, 1004 (1982)).

Here, ERISA does not specifically delegate any adjudicative functions to an otherwise private party. "ERISA does not establish eligibility requirements for disability benefits or administer the private pension plans it covers." *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 527-28 (7th Cir.1986). Moreover, the regulatory scheme does not alter any preexisting substantive rights with respect to claims or benefits and does not create presumptions on review of an initial decision denying a claim for benefits. *Cf. id*. Rather,

"ERISA merely establishes minimum standards for fiduciaries of retirement plans to improve the soundness of such plans." *Id.*  Therefore, since Congress did not delegate any adjudicative authority to employers or plan administrators when enacting ERISA, Defendant acts as a private actor -- not a state actor -- when it refuses to review its prior decision to deny of benefits under the Disability Plan. *See Black v. UNUMProvident Corp.*, 245 F.Supp.2d 194, 199 (D.Me. 2003); *Brown*, 797 F.2d at 527-28; *Grossmuller v. Int'l Union, U.A.W.*, 511 F.Supp. 709, 711 (E.D.Pa. 1981) (rejecting allegation of state action against ERISA administrator as "frivolous").

Furthermore, Planitiff cannot show that the Court's enforcement of the exhaustion requirement against him deprives him of due process.  First of all, it is not likely that one could characterize the Court's enforcement of the exhaustion requirement as state action.  Although the Supreme Court held in *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948), that the action of courts and judicial officers in their official capacities may qualify as state action with respect to the enforcement of private racially-restrictive covenants, *Shelley* cannot extend so far as to convert the judicial enforcement of *any* private contract into state action.  If that were the case, then all private contracts would have to comply with procedural due process since they could conceivably be judicially enforced, which would eviscerate the constitutional distinction between private conduct and state action.

Second, even if by some impossible stretch of the imagination Plaintiff could show that the Court's enforcement of the exhaustion requirement constitutes state action, Plaintiff cannot show that he is deprived of any property.  "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Sullivan*, 526 U.S. at 59. What constitutes "property" with respect to a certain type of entitlement is often defined by the

11

law governing that entitlement; in this case, it is federal law. The Supreme Court has held that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989); *see also Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 n. 26 (1983) ("[A] body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.").

"[R]ather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries [in ERISA], Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 (1985) (citing, *inter alia*, 29 U.S.C. §1103(a) ("assets of an employee benefit plan shall be held in trust")). In *Bruch*, the Supreme Court interpreted §1132(a)(1)(B) in accordance with trust law. *See Bruch*, 489 U.S. at 110-11 ("In determining the appropriate standard of review for actions under §1132(a)(1)(B), we are guided by principles of trust law."). Similarly, this Court will look to common law to determine the nature of Plaintiff's interest in his plan benefits.

The Court notes that 29 U.S.C. §1132(a)(1)(B) mirrors §198(1) of the Restatement (Second) of Trusts, which permits a trust beneficiary "to maintain an action at law against the trustee to enforce payment" when "the trustee is under a duty to pay money immediately and *unconditionally* to the beneficiary." *See* Restatement (Second) of Trusts §198 (emphasis added). The commentary to §198 explicitly states that the trustee's duty to pay money must be immediate and unconditional in order for the beneficiary to sue the trustee at law.[4] The reason for this appears to arise from the

---

[4] "If the trustee is not under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary cannot maintain an action at law against him." Rest. (Second) of Trusts §198(1), com. c.

law of trusts itself, which splits the "interest" in the subject matter of the trust between the trustee and the beneficiary. *See* Restatement (Second) of Trusts §2, com. f; *accord* Restatement (Third) of Trusts §2, com. d (2003). As the commentary to §2 states, the trustee holds legal title to the trust property, and the beneficiary holds equitable title. *See id*. Section 198 of Restatement (Second) of Trusts appears to recognize this distinction by suggesting that a trust beneficiary does not acquire a cognizable "legal" interest in trust property until his or her right to the trust property becomes "immediate" and "unconditional" under the terms of the trust.

The Court reads §1132 in a similar manner. The term "due" in the phrase "benefits due... under the terms of [the] plan" suggests that ERISA beneficiaries do not have a cognizable legal interest in plan benefits until they actually come "due." Borrowing the terms from §198 of Restatement (Second) of Trusts, one should read the phrase "benefits due... under the terms of [the] plan" in §1132(a)(1)(B) as stating that a participant's legally cognizable property interest in those benefits does not attach until the participant's right to those benefits becomes "immediate" and "unconditional." *Cf.* Restatement (Second) of Trusts §189. Therefore, Plaintiff cannot show that ERISA confers a protected property interest in disability benefits since one must first show that he or she is entitled to those benefits in the first place. At most, Plaintiff can only show that he holds an equitable interest in those benefits since it is still within the ERISA trustee's discretion to determine whether his claim should be immediately and unconditionally payable under the terms of the plan.

In *Sullivan*, the Supreme Court held that for purposes of the due process clause, a state workers' compensation program did not confer a constitutionally protected "property interest" in workers' compensation medical benefits without a prior determination of their entitlement to those

13

funds. The Court found that under the governing terms of the program, "disputes over the reasonableness and necessity of particular treatment must be resolved *before* an employer's obligation to pay--and an employee's entitlement to benefits--arise." *Id.*, 526 U.S. at 60. Similarly, the phrase "benefits due... under the terms of [the] plan" at issue in §1132(a)(1)(B) implies that the participant's claim for benefits must be resolved according to the "terms of the plan," before the administrator's "obligation to pay" – and the participant's "entitlement to benefits" – arise. *Cf. Sullivan*, 526 U.S. at 60. Therefore, Plaintiff cannot show that he would be deprived of any constitutionally protected property interest if the Court were to dismiss his lawsuit.

For these and the foregoing reasons, the Court rejects Plaintiff's due process challenge.

### E.  Seventh Amendment

Plaintiff's claim that upholding the exhaustion requirement somehow violates his Seventh Amendment right to a jury trial is similarly without merit. The Fifth Circuit has squarely held that a plaintiff is not entitled to a jury trial when seeking monetary relief under ERISA. *See Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) (finding that ERISA claims are restitutionary and equitable in nature).

### III.  Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED: October 5, 2005.**

_____
**JUDGE JERRY BUCHMEYER
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS**

15